## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT, <br> 1030 15th Street NW, B255 <br> Washington, DC 20005 <br><br> *Plaintiff,* <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS <br> ENFORCEMENT, <br> 500 12th Street SW <br> Washington, DC 20536 <br><br> *Defendant.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 25-cv-1987 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **COMPLAINT**

1.      American Oversight brings this action to seek information about a critical aspect of President Trump's mass deportations agenda: the expanded use of state and local entities as a tool for civil immigration enforcement, through a program under Section 287(g) of the Immigration and Nationality Act.[1]

2.      On his first day in office, President Trump telegraphed that his administration would use these 287(g) agreements to "perform the functions of immigration officers" in service of this agenda.[2] Since January, the Trump Administration – through the U.S. Immigration and

---

[1] Section 287(g) is codified at 8 U.S.C. § 1357(g). It states: "[T]he Attorney General may enter into a written agreement with a State, or any political subdivision of a State, pursuant to which an officer or employee of the State or subdivision, who is determined by the Attorney General to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States (including the transportation of such aliens across State lines to detention centers), may carry out such function at the expense of the State or political subdivision and to the extent consistent with State and local law."

[2] *Protecting the American People Against Invasion*, Exec. Order 14159, Fed. Reg. 8,443 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-29/pdf/2025-02006.pdf.

Customs Enforcement ("ICE") – has signed at least 728 287(g) agreements with local law enforcement agencies across the country.[3]

3.    The signing of the agreements has occurred against the backdrop of the Trump Administration's multi-faceted attack on immigrants: removing humanitarian protections granted during the Biden Administration; increased enforcement actions in workplaces, schools, and other public places; and the increased use of "collateral" arrests of noncitizens.[4]

4.    Through 287(g) agreements, state-level law enforcement agencies like sheriff's offices and police departments voluntarily assist in immigration enforcement, through one of three models.

5.    In the "Jail Enforcement" model, deputized officers can question individuals arrested on state charge regarding their immigration status. The "Warrant Service Officer" model authorizes non-ICE officers to execute administrative warrants on suspected noncitizens in the local law enforcement agency's jail. The "Task Force" model allows deputized officers to question and arrest individuals if they believe they violated a federal immigration law, or in ICE's words, act as a "force multiplier."[5]

---

[3] *Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act*, ICE, https://www.ice.gov/identify-and-arrest/287g (last accessed June 26, 2025). As of June 26, 68 more applications are pending.
[4] Suzanne Gamboa & Fredlyn Pierre Louis, *As Trump Pledges Mass Deportation, He's Creating More Undocumented People*, NBC News (June 19, 2025, 5:00 AM), https://www.nbcnews.com/news/us-news/trump-deportation-undocumented-immigrants-policy-change-rcna213356; Joseh Gedeon, *Trump Orders Ice Raids on Farms and Hotels after Them Days Earlier*, Guardian (June 17, 2025, 10:21 AM), https://www.theguardian.com/us-news/2025/jun/17/ice-raids-farms-hotels-trump; Bernd Debusmann Jr, *Who Has Been Arrested By ICE Under Trump?*, BBC (June 11, 2025), https://www.bbc.com/news/articles/c86p821p660o.
[5] Fact Sheet, *The 287(g) Program: An Overview*, Am. Immigr. Council (July 8, 2021), https://www.americanimmigrationcouncil.org/fact-sheet/287g-program-immigration/; ICE, *supra* note 3.

6.    Each model expands the scope of laws that officers from signatory agencies can enforce, often without proper training or guidance.

7.    At the same time, deputizing local officials can "erode community trust in local law enforcement and make it less likely for people who are undocumented, or families of mixed status, to call 911 or report crimes."[6]

8.    The training for the 287(g) programs has been slashed in recent months. Previously, the Jail Enforcement model required a four-week training; that is now only five days. The Warrant Service Officer model halved its training from eight to four hours. The training for the Task Force model is unclear, as that program had been discontinued in 2012 before the Trump Administration signed agreements in 2025.[7]

9.    What little training these law enforcement agencies receive – and their reasons for reducing the training – are of utmost important to the public, now that more than seven hundred more agencies across the country are empowered to enforce federal immigration law.

10.    In February 2025, Plaintiff American Oversight submitted a request for records under the Freedom of Information Act ("FOIA") from ICE pertaining to its 287(g) agreements for trainings, guidance, and email communications with certain key terms and external entities.

11.    Having received no records in response, American Oversight now brings this action against ICE under FOIA, 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§

---

[6] Michelle Watson, *How Local Agencies Are Partnering with ICE to Arrest an Increasing Number of Immigrants*, CNN (Apr. 28, 2025, 4:42 PM), https://www.cnn.com/2025/04/28/us/ice-immigrant-arrests-287g-program/index.html (quoting Juan Cuba of the Miami Freedom Project).

[7] Nancy Guan, *ICE and All Florida Sheriffs Sign Cooperation Agreements. Now They Await Streamlined Training,* WUSF.org, (Feb. 25, 2025, 5:15 AM), https://www.wusf.org/courts-law/2025-02-25/ice-florida-sheriffs-cooperation-agreements-await-streamlined-training; *see* ICE, *supra* note 3.

2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

13.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

14.     Because Defendant has failed to comply with the applicable time-limit provisions of FOIA, American Oversight is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial action enjoining Defendant from continuing to withhold department or agency records and ordering the production of agency records improperly withheld.

## PARTIES

15.     Plaintiff American Oversight is a nonpartisan, non-profit section 501(c)(3) organization primarily engaged in disseminating information to the public. American Oversight is committed to the promotion of transparency in government, the education of the public about government activities, and ensuring the accountability of government officials. Through research and requests for public records under FOIA, American Oversight uses the information it gathers, and its analysis of it, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases, and other media. The organization is incorporated under the laws of the District of Columbia.

16.     Defendant U.S. Immigration and Customs Enforcement is a component of the U.S. Department of Homeland Security, which is a department of the executive branch of the U.S.

4

government, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1).

ICE is headquartered in Washington, DC. ICE has possession, custody, and control of records that

American Oversight seeks.

## STATEMENT OF FACTS

17.     On February 16, 2025, American Oversight submitted a FOIA request to ICE

(internal tracking number ICE-25-0364) seeking the following records:

1.  All email communications (including emails, email attachments, complete email
    chains, calendar invitations, and calendar invitation attachments) <u>sent by</u> any of the
    Immigration and Customs Enforcement officials listed below, and/or anyone
    communicating on their behalf, such as an assistant, secretary, and/or chief of staff,
    <u>and</u> containing any of the key terms listed below.

    <u>Immigration and Customs Enforcement Officials</u>:
    i.      Caleb Vitello, Acting Director
    ii.     Kenneth Genalo, Acting Deputy Director
    iii.    Jon Feere, Chief of Staff
    iv.     Anyone serving as acting Director, Enforcement and Removal Operations
            ("ERO")

    <u>Key Terms</u>:
    a.      "287 g"
    b.      287g
    c.      287(g)
    d.      "287 (g)"
    e.      "jail enforcement model"
    f.      JEM
    g.      "warrant service officer"
    h.      WSO

    In an effort to accommodate your office and reduce the number of potentially
    responsive records to be processed and produced, American Oversight has limited
    part 1 of this request to emails <u>sent</u> by the specified individuals. To be clear,
    however, American Oversight still requests that complete email chains be
    produced, displaying both sent and received messages. This means that both an
    individual's response to an email and the initial received message are responsive to
    this request and should be produced.

2.  All email communications (including emails, email attachments, complete email
    chains, calendar invitations, and calendar invitation attachments) <u>between</u> any of

the officials listed below, <u>and</u> (b) any of the external entities listed below (including the listed domains).

<u>Immigration and Customs Enforcement Officials</u>:
i.     Caleb Vitello, Acting Director
ii.    Kenneth Genalo, Acting Deputy Director
iii.   Jon Feere, Chief of Staff
iv.    Anyone serving as acting Director, Enforcement and Removal Operations ("ERO")
v.     Anyone serving as ERO Atlanta Field Office Director ("FOD")
vi.    Anyone serving as ERO Dallas FOD
vii.   Mellissa Harper, ERO New Orleans FOD
viii.  John Cantu, ERO Phoenix FOD

<u>External Entities</u>:
i.     Alamance County, North Carolina Sheriff's Office (alamance-nc.com)
ii.    Canadian County, Oklahoma Sheriff's Office (ccsheriff.net)
iii.   Greene County, Tennessee Sheriff's Office (greenetnso.org)
iv.    Hamilton County, Tennessee Sheriff's Office (hcsheriff.gov)
v.     Knox County, Tennessee Sheriff's Office (*knoxsheriff*.org)
vi.    Pinal County, Arizona Sheriff's Office (pinal.gov)
vii.   Putnam County, Tennessee Sheriff's Office (putnamcountytnsheriff.gov)
viii.  Tarrant County, Texas Sheriff's Office (tarrantcountytx.gov, tarrantcounty.com)
ix.    Yavapai County, Arizona Sheriff's Office (yavapaiaz.gov)

Please note that American Oversight does not seek, and that this request specifically excludes, the initial mailing of news clips or other mass-distribution emails. However, subsequent communications responding to or forwarding such emails are responsive to this request. In other words, for example, if an official received a mass-distribution news clip email from the Alamance County Sheriff's Office, that initial email would not be responsive to this request. However, if the official forwarded that email to another listed individual with their own commentary, that subsequent message would be responsive to this request and should be produced.

3.  Records reflecting any final formal or informal directives (including informal email communications), guidance, protocol, or policies issued to law enforcement offices participating in 287(g) programs.

4.  Records reflecting any training materials developed, created, or issued regarding 287(g) programs.

    Responsive records may include, but should not be limited to, PowerPoint slides, informational handouts, summary documents, handwritten or typed notes, training videos, or any other records used in trainings.

**Please provide all responsive records from January 20, 2025, through the date the search is conducted.**

18.     A true and correct copy of the request is attached as Exhibit A.

19.     On February 25, 2025, ICE acknowledged receipt of the request, assigned the request tracking number 2025-ICFO-20142, and stated that ICE would invoke a 10-day extension for its response to the request.

20.     On June 23, 2025, American Oversight reached out to ICE by email to state that American Oversight planned on filing suit on this request unless ICE produced all non-exempt, responsive records.

21.     On June 25, 2025, ICE responded by email stating that the FOIA office had tasked the program office for records, and that once the FOIA office received those records it will begin to process American Oversight's request.

22.     As of the date of this filing, American Oversight has not received a final determination from ICE regarding this FOIA request.

*Exhaustion of Administrative Remedies*

23.     As of the date of this Complaint, Defendant has failed to either (a) notify American Oversight of any determination regarding its FOIA requests, including the scope of any responsive records the agency intends to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

24.     Through Defendant's failure to respond to American Oversight's FOIA request within the time period required by law, American Oversight has exhausted its administrative remedies and now seeks immediate judicial review.

## COUNT I
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

25.     American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

26.     American Oversight properly requested records within the possession, custody, and control of Defendant.

27.     Defendant is an agency subject to and within the meaning of FOIA, and it must therefore make reasonable efforts to search for requested records.

28.     Defendant has failed to promptly and adequately search for records responsive to American Oversight's FOIA requests.

29.     Defendant's failure to conduct adequate searches for responsive records violates FOIA.

30.     Plaintiff American Oversight is therefore entitled to injunctive and declaratory relief requiring Defendant to promptly make reasonable efforts to search for records responsive to American Oversight's FOIA requests.

## COUNT II
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

31.     American Oversight repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

32.     American Oversight properly requested records within the possession, custody, and control of Defendant.

33.     Defendant is wrongfully withholding non-exempt agency records requested by American Oversight by failing to produce non-exempt records responsive to its FOIA request.

8

34.    Defendant is wrongfully withholding non-exempt agency records requested by American Oversight by failing to segregate exempt information in otherwise non-exempt records responsive to American Oversight's FOIA request.

35.    Defendant's failure to provide all non-exempt responsive records violates FOIA.

36.    Plaintiff American Oversight is therefore entitled to declaratory and injunctive relief requiring Defendant to promptly produce all non-exempt records responsive to its FOIA requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

## **REQUESTED RELIEF**

WHEREFORE, American Oversight respectfully requests the Court to:

(1) Order Defendant to conduct a search or searches reasonably calculated to uncover all records responsive to American Oversight's FOIA request;

(2) Order Defendant to produce, within 20 days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to American Oversight's FOIA request with indexes justifying the withholding of any responsive records withheld under claim of exemption;

(3) Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to American Oversight's FOIA request;

(4) Award American Oversight the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) Grant American Oversight such other relief as the Court deems just and proper.


Dated:  June 26, 2025                    Respectfully submitted,

                                         */s/ Emma Lewis*
                                         Emma Lewis
                                         D.C. Bar No. 144574
                                         Daniel Martinez
                                         D.C. Bar No. 90025922
                                         AMERICAN OVERSIGHT
                                         1030 15th Street NW, B255
                                         Washington, DC 20005
                                         (202) 919-6303
                                         emma.lewis@americanoversight.org

                                         *Counsel for Plaintiff*